UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-CV-22399-GAYLES/TORRES

FRIDA KAHLO CORPORATION, a
Panamanian corporation and FRIDA KAHLO
INVESTMENTS, S.A., a Panamanian corporation,

      Plaintiffs,

v.

MARA CRISTINA TERESA ROMEO PINEDO,
an individual and FAMILIA KAHLO S.A. DE C.V,
a Mexico corporation,

      Defendants.

_____/

**ORDER**

**THIS CAUSE** comes before the Court upon Defendants' Amended Motion to Dismiss Plaintiffs' First Amended Complaint (the "Motion") [ECF No. 29]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons set forth below, the Motion is **GRANTED**.

**BACKGROUND**

Magdalena Carmen Frida Kahlo y Calderon ("Frida Kahlo") was a world-famous Mexican artist who passed away in 1954. [ECF No. 14 ¶ 55]. Defendant Mara Teresa Cristina Romeo Pinedo ("Pinedo") is Frida Kahlo's grandniece and is a citizen and resident of Mexico. *Id.* ¶ 22; [ECF No. 29-1 at 5]. Pinedo owns Defendant Familia Kahlo, S.A. de C.V. ("Familia Kahlo"), a Mexican corporation. [ECF No. 14 ¶¶ 11, 14]; [ECF No. 29-1 at 2 ¶ 3]. Pinedo travels throughout the United States to promote Frida Kahlo, representing herself and Familia Kahlo. [ECF No. 14 ¶ 16]. She has attended Frida Kahlo-related exhibits and events in various cities, including San Antonio, Boston,

1

Dallas, Denver, San Francisco, Chicago, New York, Houston, and Los Angeles. *Id.* ¶¶ 17–23.

Following Frida Kahlo's death, certain rights to her intellectual property were passed to her niece, Isolda Pinedo Kahlo, and Pinedo. [ECF No. 29-1 at 6 ¶¶ 15–17]. In 2004, Plaintiff Frida Kahlo Corporation ("FKC"), a Panamanian corporation with a principal place of business in Florida, was formed to educate, share, and preserve the art, image, and legacy of Frida Kahlo through the commercialization and licensing of the "Frida Kahlo" brand. [ECF No. 14 ¶¶ 8, 26]. In 2005, Isolda Pinedo Kahlo (acting through power of attorney), Pinedo, and Familia Kahlo entered into an agreement assigning FKC the rights to the Frida Kahlo name, likeness, brand, and marks (the "2005 Agreement"). [ECF No. 29-1 at 6 ¶¶ 16–17]. The individual trademarks were assigned to FKC in separate agreements (the "assignments"). *Id.*

FKC claims it owns hundreds of trademarks, including the six trademarks at issue here and several copyrighted works (the "FKC Trademarks").[1] [ECF No. 14 ¶¶ 27, 29]. FKC also alleges that it has established common law rights in various marks in the United States through substantial and continuous use in commerce. *Id.* ¶ 28. In 2008, Plaintiff Frida Kahlo Investments, S.A. ("Frida Kahlo Investments"), a Panamanian corporation with an office in Florida, was formed to help manage FKC's trademarks. *Id.* ¶ 9.

At some point, the parties to the 2005 Agreement began disputing FKC's ownership of the assigned intellectual property rights, resulting in litigation in several countries, including Panama and Spain. [ECF No. 29-1 at 6 ¶ 15]. Plaintiffs allege that, in as early as 2017, Defendants attacked Plaintiffs' intellectual property rights in the United States by sending cease and desist letters to Plaintiffs' licensees in different states. On March 24, 2017, Defendants sent a cease and desist letter

---

[1] The FKC Trademarks include trademarks for FRIDA, which is a stylized word mark; IMMERSIVE FRIDA KAHLO EXHIBIT, FRIDA KAHLO EXPERIENCE, FRIDA EXPERIENCE, and FRIDA KAHLO, which are all word marks identified as goods and services in relation to art exhibitions and museums; and FRIDA KAHLO, which is a word mark identified as goods and services in relation to cell phone covers. [ECF No. 14 ¶ 27].

to Cantor Fine Art ("Cantor") requesting that it refrain from using an emoji keyboard. [ECF No. 14 ¶ 40]. On September 19, 2017, Defendants sent a cease and desist letter to Rage On informing it of an intellectual property violation. *Id.* Plaintiffs do not allege where Cantor and Rage On are located. Notwithstanding, the Court assumes that Defendants' letters to Cantor and Rage On were sent to states other than Florida because Plaintiffs assert that Defendants first reached into Florida on January 19, 2021, by sending a cease and desist letter to CIC Media TV in Miami, Florida, requesting that it not violate Defendants' intellectual property rights. *Id.*

Around 2022, Plaintiffs contracted with Primo Entertainment LLC ("Primo"), a Florida limited liability company, and Garber IMC as licensees to cobrand, promote, and publish walk-through exhibitions titled "Frida Kahlo – The Life of an Icon" (the "Exhibitions"). *Id.* ¶ 30. The Exhibitions explore Frida Kahlo's life using collections of historical photographs, original films, digital environments, artistic installations, collector's items, and music. *Id.* ¶ 35. Consumers in the United States can purchase tickets on Plaintiffs' website. *Id.* ¶ 36. The Exhibitions are scheduled for seven cities across the United States, including Miami, Florida. *Id.* ¶ 37. Plaintiffs also contracted with OEG Latino ("OEG") to have Casely, Inc. ("Casely"), a licensee and maker of phone covers, sell Frida Kahlo branded phone covers at the Exhibitions. *Id.* ¶¶ 31–32.

On July 22, 2022, Defendants, through Familia Kahlo's General Manager, sent cease and desist letters to Primo, OEG, and Garber IMC requesting that they refrain from participating in any business initiative involving the use of the name or image of Frida Kahlo." *Id.* ¶¶ 40, 45. On July 25, 2022, Defendants sent a similar cease and desist letter to Casely demanding that it refrain from participating in any business initiative involving the use of the name or image of Frida Kahlo in relation to the phone covers. *Id.* ¶ 46. Defendants' cease and desist letters identified Familia Kahlo as the representative of Pinedo in her capacity as the heiress of Frida Kahlo. *Id.* ¶ 42. The letters also requested "nullity of any association or co-production agreements" in relation to the use of Frida

3

Kahlo's name and image, *Id.* ¶ 51, and informed the licensees of pending lawsuits in Panama and Spain. *See generally* [ECF No. 29-2]. Defendants' cease and desist letters did not identify any trademark or copyright registrations or otherwise identify Defendants' intellectual property rights. [ECF No. 14 ¶ 52].

Because Plaintiffs obtained copyright licenses for the use of the images of Frida Kahlo in the Exhibitions, Plaintiffs contend that Defendants do not have any rights of publicity related to Frida Kahlo's name or likeness in the United States. *Id.* ¶¶ 53–57. Plaintiffs also allege that Defendants have never enforced or defended any trademark rights in the name Frida Kahlo. *Id.* ¶¶ 58–59. Notwithstanding, Plaintiffs contend that they are incurring damages because Defendants continue to intimidate Plaintiffs' licensees in various states, including Florida. *Id.* ¶ 62.

Defendants assert that this is Plaintiffs' second attempt to have a court in the United States improperly adjudicate matters that should be adjudicated by a court in Mexico City.[2] Defendants argue that this Court lacks subject matter jurisdiction to adjudicate the relevant issues here because the assignments contain a mandatory forum selection clause stating that disputes relating to the 2005 Agreement and assignments can only be conducted before a court in Mexico City. *See* [ECF No. 29-1 at 6 ¶ 20]; [ECF No. 29-3 at 13, 32, 45, 53]. Plaintiffs claim that this case is properly before the Court because the FKC Trademarks are outside the scope of the 2005 Agreement and assignments.

On July 29, 2022, Plaintiffs filed this action against Defendants for copyright infringement, tortious interference with advantageous business relationships, and declaratory relief under 28 U.S.C. § 2201. [ECF No. 1]. On December 15, 2022, Plaintiffs filed a First Amended Complaint ("FAC"), dropping their copyright infringement claim. Plaintiffs' claims for tortious interference

---

[2] In 2018, Defendants FKC and Frida Kahlo Investments sued Pinedo and her daughter in a similar action before a different court in this district. *Frida Kahlo Corp. v. Pinedo*, No. 18-21826-CIV, 2021 WL 4147876 (S.D. Fla. Sept. 13, 2021). The allegations and arguments by the parties in that case are similar to those here. That court found that it lacked personal jurisdiction over the defendants.

(Count I) and declaratory relief (Count II) remain. [ECF No. 14]. Defendants now move to dismiss the instant action for lack of subject matter jurisdiction as to Count II and lack of personal jurisdiction as to both claims.

## DISCUSSION

### I.      Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction brought under Federal Rule of Civil Procedure 12(b)(1) can be asserted on facial or factual grounds. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). In a facial challenge, a court is required only to determine if the plaintiff has "sufficiently alleged a basis for subject matter jurisdiction." *McElmurray v. Consol. Gov't*, 501 F.3d 1244, 1251 (11th Cir. 2007). Furthermore, "the court must consider the allegations in the plaintiff's complaint as true." *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).[3] By contrast, a factual attack "challenge[s] 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered.'" *McElmurray*, 501 F.3d at 1251 (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). In a factual attack, "no presumptive truthfulness attaches to [a] plaintiff's allegations." *Lawrence*, 919 F.2d at 1529 (quotation marks omitted). Here, Defendants bring a factual attack against the FAC. [ECF No. 29 at 16].

Defendants argue that the Court lacks subject matter jurisdiction to grant declaratory relief because the assignments' forum selection clause only allows a court in Mexico City to adjudicate disputes over the legal right and title to the Frida Kahlo name. However, the doctrine of *forum non conveniens* is the appropriate way to enforce a forum-selection clause. *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284 (11th Cir. 2021); *see Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d

---

[3] The United States Court of Appeals for the Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

1285, 1289 (11th Cir. 1998). *Forum non conveniens* is not asserted in this motion, nor have the parties properly briefed this issue.

Defendants also argue that this is no case of actual controversy requiring declaratory relief.[4] The Declaratory Judgment Act provides: "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A "case of actual controversy" refers to the type of "Cases" and "Controversies" that are justiciable under Article III of the U.S. Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Because the parties dispute ownership of the FKC Trademarks and Plaintiffs' legal right and title to the Frida Kahlo name, Count II raises an actual controversy arising under federal law. Accordingly, the Court has subject matter jurisdiction over Plaintiffs' claim for declaratory relief.

## II.     Personal Jurisdiction

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). When a defendant submits evidence to support its challenge to personal jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).[5] "Where the plaintiff's complaint and supporting evidence

---

[4] The Declaratory Judgment Act does not establish an independent basis for subject matter jurisdiction. *Aguilera v. Dist. Dir.*, 423 F. App'x 916, 918 (11th Cir. 2011). Here, the Court has diversity and federal question jurisdiction as to Count II. There is no dispute that diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a) because the parties are diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See* [ECF No. 14 ¶¶ 2, 8–14]. The Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs allege trademark and copyright violations under the Lanham Act, 15 U.S.C. § 1051, *et seq. Id.* ¶ 2.

[5] In support of their Motion, Defendants attach Alfonso Duran and Pinedo's affidavits, [ECF No. 29-1]; the cease and desist letters sent to Primo, OEG, and Casely, [ECF No. 29-2]; and the assignments, [ECF No. 29-3].

conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff," *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002), and must "accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara*, 916 F.2d at 1514.

The Court undertakes a two-step inquiry to determine whether personal jurisdiction over a nonresident defendant exists. First, the Court must determine whether the exercise of jurisdiction is appropriate under Florida's long-arm statute. Second, the Court must determine whether personal jurisdiction over the defendant violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Mutual Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004).

### A.      Florida's Long-Arm Statute[6]

Plaintiffs argue that this Court has specific personal jurisdiction over Defendants under the Florida long-arm statute's tortious acts provision, which provides that a nonresident is subject to personal jurisdiction in Florida for any cause of action that arises from committing a tortious act within Florida. Fla. Stat. § 48.193(1)(a)(2). Courts in the Eleventh Circuit apply a broad construction of subsection (1)(a)(2) and consistently hold that the physical presence of a defendant in Florida is not required for long-arm jurisdiction if the plaintiff suffered harm in Florida. *See, e.g.*, *Louis Vuitton*, 736 F.3d at 1354; *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). "This long-arm jurisdiction even extends to defendants who committed their tortious acts outside the state if their acts 'cause injury in Florida.'" *Id.* (quoting *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1216 (11th Cir. 1999)). "Thus, a foreign defendant can commit a tortious act in Florida through telephonic, electronic, or written communications into Florida so long as the cause

---

[6] Florida's long-arm statute may be satisfied through either general or specific jurisdiction. *See Dohler S.A. v. Guru*, No. 16-23137-CIV, 2017 WL 4621098, at *3–4 (S.D. Fla. Oct. 16, 2017). As Plaintiff argues the Court has specific jurisdiction over Defendants [ECF No. 14 ¶ 6], the Court declines to address general jurisdiction.

of action arises from these communications." *Macrotrend Cap. Grp. Inc. v. Edwards*, No. 18-61327-CIV, 2019 WL 2106421, at *4 (S.D. Fla. Mar. 4, 2019) (quotation marks and citation omitted). It is well settled in the Eleventh Circuit that trademark claims under the Lanham Act may constitute tortious acts for long-arm purposes, *Louis Vuitton*, 736 F.3d at 1353, and that out-of-state infringement causing injury in Florida satisfies the statute, *Licciardello*, 544 F.3d at 1283; *see Honus Wagner Co. v. Luminary Group LLC*, No. 17-61317-CIV, 2017 WL 6547899, at *8 (S.D. Fla. Dec. 21, 2017) (collecting cases finding long-arm jurisdiction for tortious out-of-state conduct that caused in-state harm).

Plaintiffs allege that both Defendants committed tortious acts within Florida by sending Plaintiffs' licensees, including Florida-based Primo, cease and desist letters concerning the rights to the name and image of Frida Kahlo. [ECF No. 14 ¶¶ 40–47]. Plaintiffs further allege that the cease and desist letters misrepresented that Defendants are the rightful owners of the name and image of Frida Kahlo and other marks used in connection with the Exhibitions. *Id.* ¶¶ 75–80. Plaintiffs claim that they have incurred damages because of "Defendants' interference in Plaintiffs' business relationships with their licensees." *Id.* ¶ 65.

The Court finds that it has personal jurisdiction over Familia Kahlo under the Florida long-arm statute's tortious acts provision. Fla. Stat. § 48.193(1)(a)(2). Taken as true, Plaintiffs' allegations are sufficient to show that they suffered injury in Florida because Familia Kahlo sent cease and desist letters to some of Plaintiffs' licensees in Florida regarding intellectual property infringement and tortiously interfered with Plaintiffs' business relationships. *See HSI IP, Inc. v. Champion Window Mfg. & Supply Co., Inc.*, 510 F. Supp. 2d 948, 954–55 (M.D. Fla. 2007) (finding that a defendant who allegedly infringed a Florida trademark was subject to specific jurisdiction due to the commission of a tortious act in Florida despite lacking other Florida connections); *see, e.g., Licciardello*, 544 F.3d at 1283 (holding that a trademark infringement claim

8

qualified as a tortious act under the Florida long-arm statute); *Roof & Rack Prods., Inc. v. GYB Inv'rs*, LLC, No. 13-80575-CIV, 2014 WL 3116413, at *2 (S.D. Fla. July 8, 2014) ("Copyright infringement is a tortious act . . . and a person who infringes upon a copyright whose owner resides in Florida causes injury inside the state."); *Macrotrend Cap. Grp. Inc.*, 2019 WL 2106421, at *4 (analyzing a tortious interference claim under Fla. Stat. § 48.193(1)(a)(2)).[7]

However, Florida's corporate shield doctrine prevents the Court from exercising personal jurisdiction over Pinedo. The corporate shield doctrine provides that "a nonresident employee-defendant who works only outside of Florida, commits no acts in Florida, and has no personal connection with Florida will not be subject to the personal jurisdiction of Florida courts simply because he or she is a corporate officer or employee." *Kitroser v. Hurt*, 85 So. 3d 1084, 1089 (Fla. 2012). This is because "it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993) (internal quotation marks and citations omitted). However, intentional misconduct by an individual defendant may constitute an exception to the corporate shield doctrine. *Id.* n. 1. Generally, Florida courts require that the intentional tort be committed for the corporate officer's personal benefit. *VIS Holdings Corp. v. Cooper*, No. 07-20882-CIV, 2007 WL 9702900, at *6 (S.D. Fla. Dec. 11, 2007); *see Smith*, 2009 WL 10667191, at *8 ("[M]ere allegations of intentional misconduct on behalf of the employer . . . without more are not enough to avoid the corporate shield doctrine.").

---

[7] Plaintiffs also argue that Federal Rule of Civil Procedure Rule 4(k)(2) confers personal jurisdiction over Defendants. However, a court rarely invokes its jurisdiction under this rule. *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1337 (S.D. Fla. 2016). Rule 4(k)(2) does not apply to Familia Kahlo because it is subject to the Court's personal jurisdiction. Even if Rule 4(k)(2) applied to Pinedo, exercising jurisdiction over her would offend due process because Pinedo's limited and sporadic trips to the United States on behalf of Familia Kahlo do not establish sufficient contacts with the United States "as a whole." [ECF No. 14 ¶¶ 16–24, 33]. *See McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1343 (S.D. Fla. 2017).

Plaintiffs argue that the corporate shield doctrine is inapplicable because Pinedo committed a tortious act in Florida by intentionally sending the cease and desist letters through her agent, Familia Kahlo. The only factual support Plaintiffs offer is that Pinedo is an officer and the owner of Familia Kahlo, and Familia Kahlo identifies as Pinedo's representative in the cease and desist letters. However, Pinedo "is not by virtue of [her] position subject to personal jurisdiction." *Doe*, 620 So. 2d at 1006. Although the Complaint alleges that Familia Kahlo sent the letters on behalf of Pinedo, it does not allege that Pinedo took any action to target Florida, or that Pinedo gained any pecuniary benefit from activities in the State of Florida.

The FAC contains no allegations showing that Pinedo was *personally* involved in sending the letters to Florida or manifested a specific intent to interfere with Plaintiffs' licensee agreements in Florida. Even if Familia Kahlo sent the letters on Pinedo's behalf, Pinedo may be shielded because the letters were sent in her capacity as an officer of Familia Kahlo and for the benefit of Familia Kahlo, not herself. Just because Pinedo oversaw and was responsible for Familia Kahlo and the litigation over the disputed intellectual property, it "is not enough to establish jurisdiction over [her] for actions taken in the scope of [her] employment entirely in another state." *Rafferty v. Retrieval-Masters Creditors Bureau, Inc.*, No. 17-426-CIV, 2018 WL 4381196, at *3 (M.D. Fla. July 31, 2018), *report and recommendation adopted*, No. 17-426-CIV, 2018 WL 4381167, at *1 (M.D. Fla. Aug. 15, 2018). Even if Pinedo did commit an intentional tort, Plaintiffs do not allege that Pinedo gained any pecuniary or personal benefit from sending the cease and desist letters. Accordingly, based on these allegations, the corporate shield doctrine precludes the Court from exercising personal jurisdiction over Pinedo.

10

**B.      Due Process**

Plaintiffs fail to establish that personal jurisdiction over Defendants comports with the Due Process Clause of the Fourteenth Amendment.[8] "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (citation omitted). "In specific personal jurisdiction cases, we apply the three-part due process test, which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts within the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *See Dohler S.A. v. Guru*, No. 16-23137-CIV, 2017 WL 4621098, at *5 (S.D. Fla. Oct. 16, 2017) (quoting *Louis Vuitton*, 736 F.3d at 1355). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, 'a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Louis Vuitton*, 736 F.3d at 1355 (quoting *Diamond Crystal*, 593 F.3d at 1267).

As to the second prong (purposeful availment), a court may apply the traditional minimum contacts test or, in intentional tort cases, utilize the "effects test."[9] *Frida Kahlo Corp.*, 2021 WL 4147876, at *4. Under the minimum contacts test, the contacts must "(1) [be] related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed

---

[8] For argument's sake, the Court assumes that it has personal jurisdiction over Pinedo under the Florida long-arm statute's tortious acts provision. Fla. Stat. § 48.193(1)(a)(2).

[9] The Eleventh Circuit has made clear that courts may apply either the effects test or the minimum contacts test to determine whether purposeful availment occurred in intentional tort cases. *Louis Vuitton*, 736 F.3d at 1356. The Court applies the traditional minimum contacts test.

[itself] of the privileges of doing business within the forum; and (3) [be] such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357.

Applying the minimum contacts test, the Court finds that Plaintiffs have not established that Defendants purposefully availed themselves "of the privilege of conducting activities within [Florida], thus invoking the benefits and protections of its laws." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1363 (11th Cir. 2006) (citation omitted).[10] Plaintiffs allege that Defendants have sufficient minimum contacts with Florida because Defendants directed their cease and desist letters to Plaintiffs' licensees in Florida. However, sending an infringement letter, *without more*, is insufficient to satisfy the requirements of due process when exercising jurisdiction over a nonresident defendant. *See Healthe, Inc. v. High Energy Ozone LLC,* 533 F. Supp. 3d 1120, 1125 (M.D. Fla. 2021) (citing *Campbell Pet Co. v. Miale*, 542 F.3d 879, 885 (Fed. Cir. 2008)) (emphasis added). Pinedo does not engage in any significant or ongoing activity in Florida. *See* [ECF No. 29-1 at 5]. Pinedo is a citizen of Mexico, and she does not live, own property, or conduct business in Florida. *Id*. Similarly, Familia Kahlo is a Mexican corporation and has no place of business in Florida. *Id.* at 2–3. Pinedo's sporadic travel to Florida on behalf of Familia Kahlo does not establish sufficient minimum contacts for either Defendant.

Moreover, Defendants' four letters are insufficient to establish minimum contacts with Florida without any additional steps by Defendants to purposefully avail themselves of the privilege of doing business in Florida. *Compare Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360–61 (Fed. Cir. 1998) (holding that three cease and desist letters were insufficient to establish personal jurisdiction), *with*, *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d

---

[10] Because the Court finds that Plaintiffs cannot satisfy the purposeful availment prong of the test, it does not address whether Plaintiffs' claims arise out of Defendants' contacts with the forum or whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

1147, 1156–57 (Fed. Cir. 2021) (finding that the defendant's contacts with the forum state, including "twenty-two communications over the course of about three months," were sufficient minimum contacts). Notably, only two of the six cease and desist letters were addressed to licensees located in Florida: CIC Media TV and Primo. Aside from sending the letters, Defendants did not confront Plaintiffs' licensees in Florida, visit Plaintiffs' office in Florida to negotiate trademarks, or engage in any other activities that establish sufficient minimum contacts. Therefore, Defendants did not purposefully avail themselves of the privilege of conducting activities within Florida. Because personal jurisdiction over the Defendants does not comport with due process, Plaintiffs' FAC must be dismissed.[11]

## CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.      Defendants' Amended Motion to Dismiss, [ECF No. 29], is **GRANTED**.

2.      Plaintiffs' First Amended Complaint, [ECF No. 14], is **DISMISSED without prejudice**.

3.      Any pending motions are **DENIED as moot**.

4.      This case is **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of December, 2023.

_____

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc:      All Counsel of Record

---

[11] Without leave from the Court and in violation of Local Rule 7.1(c), Plaintiffs filed two notices of additional evidence in support of their Motion. [ECF Nos. 43, 57]. The additional evidence relates to Defendants' purported activities in this district, communications with unrelated third parties, and additional cease and desist letters. However, Plaintiffs' claims do not arise from the acts alleged in the additional evidence. The FAC explicitly alleges that Plaintiffs' claims arise from "Defendants' tortious interference with Frida Kahlo Corporation's licensees in July 2022, and the rights of the parties with respect to the name and image of Frida Kahlo in connection with art exhibitions and phone covers." [ECF No. 14 ¶ 25]. Even considering the additional evidence, Plaintiffs do not meet their burden of establishing personal jurisdiction over the Defendants. *See Douglas v. Cruise Yacht Op Co.*, No. 21-23980-CIV, 2022 WL 1719312, at *10 (S.D. Fla. May 27, 2022).